Hon. Martin S. Cooper General Counsel New York State Urban Development Corporation
This is in response to your request for an opinion as to the propriety of any involvement by Richard A. Kahan, President of Battery Park City Authority (BPCA) and President of New York Urban Development Corporation (UDC), in dealings on behalf of BPCA with Mr. Samuel J. Lefrak and/or Mr. Lester Fisher or entities controlled by one or both of them as developer, contractor, operator and/or equity investor. The inquiry arises out of the following circumstances:
1. Richard A. Kahan, President and Chief Executive Officer Designate of UDC since June 29, 1978, has also served ex officio as President of Battery Park City Authority (BPCA) since January 3, 1979. BPCA anticipates financing and otherwise participating in the development of residential and commercial projects during the course of development of the Battery Park City site. These activities may involve the participation of Mr. Samuel J. Lefrak and/or Mr. Lester Fisher or an entity controlled by one or both of them as developer, contractor, operator and/or equity investor.
2. Between February 1973 and August 1976 Mr. Kahan was employed by Lefrak Organization, a corporation controlled by Mr. Lefrak. Between July 1973 and August 1976 he was employed by Battery Park City Housing, Co., a joint venture of Lefrak Organization and Fisher Brothers, an organization controlled by Mr. Fisher and others. Mr. Kahan has never had any ownership or other interest in either organization (except his prior employment); and since August 1976 he has had no employment or other association with those organizations.
3. During his prior employment Mr. Kahan was project manager for the initial stages of development of a residential project at Battery Park City. In January 1979 Mr. Kahan and his fellow members of the Authority were confronted with the necessity for prompt decision whether to approve the "Pod 3" housing development project which had been negotiated over a period of time by the Authority's former Chairman, Charles J. Urstadt. At the first meeting to consider the Pod 3 matter after the new members took office Mr. Kahan stated for the record "that he would not participate in discussions by the members relating thereto or in any other aspect of the negotiations with the Developer of Pod 3." Similarly, we are advised that he has taken no part in subsequent analyses and negotiations involving the project.
Based on those circumstances, in the Spring of 1979 UDC requested an opinion whether there was any violation of Sections 73 or 74 of the Public Officers Law. On August 1, 1979, I issued an opinion letter concluding on the basis of the information available to me that there was no violation.
Thereafter, on October 10, 1979, you requested a further opinion as to whether Mr. Kahan might now be permitted to deal on behalf of BPCA or UDC with the Lefrak/Fisher interests without fear of violating the Public Officers Law.
The relevant portions of the Public Officers Law appear in Section 74 (3), specifically subsections (e), (f) and (h), which read as follows:
 e. No officer or employee of a state agency, member of the legislature or legislative employee should engage in any transaction as representative or agent of the state with any business entity in which he has a direct or indirect financial interest that might reasonably tend to conflict with the proper discharge of his official duties.
 f. An officer or employee of a state agency, member of the legislature or legislative employee should not by his conduct give reasonable basis for the impression that any person can improperly influence him or unduly enjoy his favor in the performance of his official duties, or that he is affected by the kinship, rank, position or influence of any party or person.
 h. An officer or employee of a state agency, member of the legislature or legislative employee should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust.
Section 74 (3) (e), forbidding transactions between a state agency employee and a business entity in which the employee has a financial interest, is not applicable to this situation because Mr. Kahan has had no financial stake in the Lefrak/Fisher interests since he left that employment in 1976.
Section 74 (3) (f) requires a state agency employee to avoid giving any "reasonable basis for the impression" that his or her judgment could be improperly influenced by any other person. I conclude that there is nothing inherent in the former employer-employee relationship between Mr. Kahan and the Lefrak/Fisher interests that would give such an impression. I base such conclusion on the following facts applicable to this case, as furnished to me by UDC:
a. After Mr. Kahan commenced his public employment, he scrupulously avoided any dealings with his former employers in connection with the "Pod 3" housing development on which he had worked during his private employment. I understand that any future dealings with the Lefrak/Fisher interests will relate to matters with which Mr. Kahan was not directly involved in his previous employment.
b. Mr Kahan was presumably employed at UDC because of his expertise in housing project development, knowledge which had been acquired during his work for a major developer. If he were to be denied the authority to deal with one of the most important private developers in this relatively narrow field, UDC and the State of New York would be deprived to that extent of the benefit of Mr. Kahan's specialized knowledge.
c. Nearly three and a half years have elapsed since Mr. Kahan was employed by the Lefrak/Fisher interests. While the passage of time does not by itself resolve all potential conflicts, the length of time since Mr. Kahan's association with Lefrak/Fisher is relevant in the circumstances here presented. I note also that Section 73 (7) of the Public Officers Law, dealing with the reverse situation of a state agency employee who resigns to accept private employment, bars the individual from dealing with the former public employer for only two years, even as to matters in which there was personal participation. To erect a permanent bar against such dealings would be to impose a serious barrier to the movement of individuals from private employment to public service and the reverse.
d. All dealings between BPCA or UDC and private interests are subject to public scrutiny. If there is ever a suggestion of improper influence, the charge could be raised at any time. I do not find anything in the circumstances of this case to make me believe that the simple fact of prior employment with a prospective contractor necessarily leads to an impression of the risk of improper influence.
Section 74 (3) (h) requires a state agency employee "to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust." The injunction is manifestly proper. Here, too, however, there is nothing in the former relationship between Mr. Kahan and the Lefrak/Fisher interests to raise such suspicion. If future conduct should give rise to such suspicion, that would be the time to act. Meanwhile, I conclude that Mr. Kahan should not be barred from future dealings with the Lefrak/Fisher interests as the State's best interest will be served by not foreclosing such activities where appropriate to his position with BPCA and UDC.
It is my opinion therefore that Mr. Kahan may deal with the Lefrak/Fisher interests without violating the Public Officers Law.